UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case Number: 25-23845-CIV-MARTINEZ

CRISTIAN AGUILAR MERINO,

    Petitioner,

v.

GARRETT RIPA, KRISTI NOEM, and
PAM BONDI *in their official capacities*,

    Respondents.
_____/

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

**THIS CAUSE** came before the Court on Petitioner Cristian Aguilar Merino's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, (the "Petition"). *See* (ECF No. 1). In accordance with 28 U.S.C. § 2243, the Court issued an Order directing the Respondents to show cause why the Petition should not be granted. *See* (ECF No. 9). Respondents filed their Response on September 9, 2025, (the "Response"), (ECF No. 12), and Petitioner replied on September 11, 2024, ("Reply"), (ECF No. 16). On September 16, 2025, this Court heard arguments from both sides. (ECF No. 20). The Court has considered the Petition, Response, Reply, oral arguments, the record, and is otherwise fully advised in the premises. For the reasons set forth herein, the Petition is **GRANTED**.

### I.   BACKGROUND

Petitioner is a Honduran national who came to the United States in 2016 as an unaccompanied minor. *See* (ECF No. 1 at ¶ 30). Immigration authorities apprehended Petitioner at the border, issued him a Notice to Appear ("NTA"), and took him into custody. *See* (*id.* at ¶ 31). Petitioner was thereafter reunited with his parents in the United States, but experienced domestic

violence and abuse by his father. *See* (*id.* at ¶ 27). After Petitioner's mother obtained a restraining order against Petitioner's father, *see* (*id.* at ¶ 28), Petitioner applied for Special Immigrant Juvenile Status ("SIJS"), which was granted on December 3, 2019. *See* (*id.* at ¶ 33). On September 14, 2021, an Immigration Judge ("IJ") dismissed Petitioner's removal proceedings, stating "the Department has determined that the circumstances of this case have changed after the notice to appear was issued to such an extent that continuation is no longer in the best interest of the government." (*Id.* at ¶ 34). On May 11, 2022, Petitioner was granted "deferred action" status, making him a "lower priority for removal from the United States." (*Id.* at ¶ 34). In May 2024, Petitioner became eligible for and filed an I-485 application to become a Legal Permanent Resident, which remains pending before U.S. Citizenship and Immigration Services. *See* (*id.* at ¶ 36). Petitioner has remained in the United States since his arrival at the age of 15 and has consistently maintained employment. *See* (*id.* at ¶ 25).

Immigration and Customs Enforcement ("ICE") detained Petitioner on June 6, 2025, during a traffic stop, and took him into custody at Krome North Service Processing Center. *See* (*id.* at ¶ 37). ICE arrested Petitioner and issued a new NTA that contains the exact same charge as the original NTA filed against Petitioner when he arrived at the border in 2016. *See* (*id.* at ¶ 37). On June 24, 2025, Petitioner requested that the Immigration Court issue him a bond, and filed a Motion to Terminate his removal proceedings, arguing that ICE cannot remove Petitioner on the grounds alleged in the NTA. *See* (*id.* at ¶¶ 38-39). On July 31, 2025, an IJ issued a written opinion that Petitioner was entitled to bond because he had been detained under 8 U.S.C. § 1226(a), not § 1225(b)(2). *See* (*id.* at ¶ 40). On August 1, 2025, the IJ ordered Petitioner's release on an $8,000 bond, as Petitioner did not pose a danger to property or persons and was not a flight risk. *See* (*id.* at ¶ 41).

Petitioner's family went to pay the bond but learned that ICE had filed a Notice of Intent to Appeal the IJ's Order, automatically staying the bond under 8 C.F.R. § 1003.19(i)(2). *See* (*id.* at ¶ 42). On August 5, 2025, a different IJ granted Petitioner's Motion to terminate, closing his removal proceedings. *See* (*id.* at ¶ 43). Despite this, on August 11, 2025, ICE refiled the same NTA for the third time, charging Petitioner as removeable from the United States under U.S.C. § 1182(a)(6)(A)(i). *See* (*id.*) Petitioner has remained in ICE custody throughout the pendency of these proceedings.[1] *See* (*id.* at ¶ 44). While in custody, Petitioner alleges he has not had a bed to sleep on, his movement has been significantly restricted, he was wrongfully transferred to Miami Federal Detention Center, was verbally abused by guards, and fed expired food. *See* (*id.* at ¶¶ 44-47).

Petitioner seeks his immediate release from ICE custody on two grounds: (1) ICE lacks the statutory authority to detain Petitioner; and (2) ICE's invocation of the automatic stay violates Petitioner's due process rights. *See* (*id.* at ¶¶ 5-6). On September 15, 2025, Respondents filed a Motion to Dismiss the Petition, arguing that the IJ's September 12, 2025 Order, which held that the Immigration Court lacked jurisdiction to grant the Petitioner's release on bond, mooted the IJ's original August 1, 2025 Order granting bond, ICE's appeal of that Order, and the automatic stay of the original bond. *See* (ECF No. 18 at 1). The Court heard oral argument on both the Petition and the Respondents' Motion to Dismiss, *see* (ECF No. 20), and agrees with the Petitioner.

## II. DISCUSSION

Petitioner seeks a writ of habeas corpus for his immediate release from custody, arguing that Respondents are violating his right to substantive and procedural due process by continuing to detain him after being granted bond. *See* (ECF No. 1 at 13). Respondents make three arguments

---

[1] ICE released Petitioner from custody on August 8, 2025, due to what ICE claims was an error. ICE re-detained Petitioner at his home on August 11, 2025. *See* (ECF No. 1 at ¶ 48).

3

in opposition: (1) the Court lacks subject matter jurisdiction to adjudicate Petitioner's custody; (2) Petitioner's mandatory detention is legal; and (3) the Department of Homeland Security's ("DHS") use of the automatic stay pursuant to 8 C.F.R. §1003.19(i)(2) to stay the bond is Constitutional. *See generally* (ECF No. 12). Respondents have additionally argued that the IJ's September 12, 2025 Order moots the IJ's August 1, 2025 Order granting Petitioner bond. *See* (ECF No. 20). The Court addresses each argument below.

### A. Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (citation omitted). Several sections of the Immigration and Nationality Act ("INA") curtail the jurisdiction of federal district courts in immigration cases. *See Lopez-Arevelo v. Ripa*, No. EP-25-CV-337-KC, 2025 WL 2691828, at *3 (W.D. Tex. Sept. 22, 2025) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 292–96, 138 S.Ct. 830, 200 L.Ed.2d 122 (2018)). Here, Respondents argue that "8 U.S.C. § 1252(g) precludes the Court's exercise of subject matter jurisdiction" because it is a "discretion-protecting provision" that Congress designed to prevent the "deconstruction, fragmentation, and hence prolongation of removal proceedings." (ECF No. 12 at 5) (citation omitted).

Section 1252(g) applies to "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). But the Supreme Court has "not interpret[ed] this language to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, [the Court has] read the language to refer to just those three specific actions themselves." *Jennings*, 583 U.S. at 294, (citing *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482–83 (1999)). Section 1252(g) lists just three "discrete actions": actions to "*commence* proceedings, *adjudicate* cases, or *execute*

4

removal orders." *Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1272 (11th Cir. 2021) (citing *Reno*, 525 U.S. at 482).

Here, Petitioner is not challenging Respondents' decision to execute a removal order, nor is Petitioner challenging Respondents' decision to commence or adjudicate his removal proceedings. Instead, Petitioner challenges his ongoing detention, which is not a claim barred by § 1252(g). *See, e.g., Lopez-Arevelo*, 2025 WL 2691828 at *3; *Leal-Hernandez v. Noem*, No. 1:25-cv-02428, 2025 WL 2430025 (D. Md. Aug. 24, 2025); *Aguilar Maldonado v. Olson*, No. 25-cv-3142, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Garcia Jimenez v. Kramer*, No. 4:25-cv-3162, 2025 WL 2374223 (D. Neb. Aug. 14, 2025). *See also Madu v. U.S. Atty. Gen.*, 470 F.3d 1362 (11th Cir. 2006) ("[petitioner] does not challenge the INS's exercise of discretion. Rather, he brings a constitutional challenge to his detention and impending removal…alleging that the 'detention and imminent deportation of Petitioner are denials of his substantive right to due process ....' accordingly, section 1252(g) does not apply.") (cleaned up). Therefore, this Court has jurisdiction to consider Petitioner's claims.

**B. Detention**

This case concerns the mandatory versus discretionary detention provisions under § 1226(a) and § 1225(b)(2) of the INA. Petitioner and Respondents disagree on which provision governs Petitioner's detention. In distinguishing between noncitizens arriving to the U.S. versus noncitizens residing in the U.S., Congress acknowledged the more substantial due process rights of noncitizens already residing in the U.S. with those of noncitizens recently arriving. *See* H.R. REP. 104-469, p. 1, at 163-66 ("an alien present in the U.S. has a constitutional liberty interest to remain in the U.S.", versus the assumed minimal due process rights of arriving noncitizens) (citing *Knauff v. Shaughnessy*, 338 U.S 537 (1950)). Since then, agencies interpreting the INA have applied § 1226(a) to noncitizens like Petitioner, who were apprehended while residing in the U.S.,

5

rather than at the border. *See Maldonado v. Feely et al.*, Case No. 25-cv-01542-RFB-EJY (D. Nev. Sept. 17, 2025) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination . . . The effect of this change is that inadmissible aliens, except for arriving aliens, have available to them bond redetermination hearings before an immigration judge, while arriving aliens do not. This procedure maintains the status quo . . .") (citing *Inspection and Expedited Removal of Aliens*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997))

On July 8, 2025, DHS issued a notice to all ICE employees, indicating that § 1225(b)(2), rather than § 1226, is the applicable immigration authority for any alien present in the U.S. "who has not been admitted. . . whether or not at a designated port of arrival." *See ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, AILA Doc. No. 25071607 (July 8, 2025) (the "Notice"). The Notice states, "it is the position of DHS that such aliens are subject to [mandatory] detention under INA § 235(b) and may not be released from ICE custody except by INA § 212(d)(5) parole." *Id.* The Notice further provides "[t]hese aliens are also ineligible for a custody redetermination hearing (bond hearing) before an immigration judge and may not be released for the duration of their removal proceedings absent a parole by DHS. For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated." *Id.*

DHS's interpretation of the applicability of § 1225(b)(2), rather than § 1226, to noncitizens who have resided in the county for years and were already in the United States when apprehended, runs afoul of the statutes' legislative history, plain meaning, and interpretation by courts in the First, Second, Fifth, Sixth, Eighth, and Ninth Circuits. *See e.g.*, *Lopez-Campos v. Raycraft*, No. 2:25-CV-12486, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Rodriguez v. Bostock*, 779 F.

Supp. 3d 1239 (W.D. Wash. 2025); *Gomes v. Hyde*, No. 1:25-cv-11571-JEK, 2025 WL 1869299 (D. Mass. July 7, 2025); *Martinez v. Hyde*, 1:25-cv-11613-BEM, 2025 WL 208438 (D. Mass. July 24, 2025); *Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal. July 28, 2025); *Rosado v. Figueroa et al.*, No. 2:25-cv-02157-DLR, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025); *Lopez Benitez v. Francis et al.*, No. 1:25-cv-05937-DEH, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Gonzalez et al. v. Noem et al.*, No. 5:25-cv-02054-ODW-BFM (C.D. Cal. Aug. 13, 2025); *dos Santos v. Noem*, No. 1:25-cv-12052-JEK, 2025 WL 2370988 (D. Mass. Aug. 14, 2025); *Maldonado v. Olson*, No. 0:25-cv-03142-SRN-SGE, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Romero v. Hyde, et al.*, No. 1:25-cv-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Benitez et al. v. Noem et al.*, No. 5:25-cv-02190-RGK-AS (C.D. Cal. Aug. 26, 2025); *Kostak v. Trump et al.*, No. 3:25-cv-01093-JE-KDM, 2025 WL 2472136 (W.D. La. Aug. 27, 2025). This Court agrees that the plain reading of the statutes supports a finding that Petitioner, who has resided in the country for nearly a decade and was apprehended while already within the United States, not at the border, falls under § 1226(a), not § 1225(b)(2), and is therefore subject to discretionary bond determination.

### C. Due Process

Next, the Court must determine whether Petitioner's continued detention violates his due process rights. The Fifth Amendment protects the right to be free from deprivation of life, liberty or property without due process of law. U.S. CONST. amend. V. The Due Process Clause extends to all "persons" regardless of status, including non-citizens, whether here lawfully, unlawfully, temporarily, or permanently. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To determine whether detention violates procedural due process, courts apply the three-part test set forth in *Matthews v. Eldridge*, 424 U.S. 319 (1976). *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and noting that, "when considering due process challenges to

7

[discretionary noncitizen detention] other circuits ... have applied the *Mathews* test"). Under *Mathews*, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. Further, government detention violates substantive due process unless it is ordered in a criminal proceeding with adequate procedural protections, or in non-punitive circumstances "where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)

Respondents argue that Petitioner's due process rights are not violated by his detention, because § 1225(b)(2) "mandates detention during the pendency of his removal proceedings…therefore a stay of the immigration judge's erroneous bond determination should have no effect on his detention, since it is likely that the BIA will reverse the grant of bond based on its recent decision in *Matter of Hurtado* and other legal authority." *See* (ECF No. 12 at 14) (cleaned up). The Respondents' argument is unavailing, as the automatic stay violates the Petitioner's procedural and substantive due process rights.

As explained above, § 1226(a), not § 1225(b)(2), governs Petitioner's detention. The discretionary bond framework under § 1226(a) requires a bond hearing to make an individualized custody determination as to the applicant's risk of flight or dangerousness. On August 1, 2025, the IJ made such a determination, finding that Petitioner did not pose a danger to property or persons and was not a flight risk, ordering Petitioner's release on an $8,000 bond. *See* (ECF No. 1-9). DHS immediately appealed the decision to the Board of Immigration Appeals ("BIA"), pursuant to 8

8

C.F.R. §1003.19(i)(2), which automatically stayed the bond, resulting in Petitioner's continued detention. *See* (ECF No. 1-9). This "unilateral stay stands in contrast to the ordinary requirements of overriding a judge's order pending appeal, which requires a showing of, *inter alia*, a likeliness of success on the merits of the appeal and irreparable injury in the absence of a stay." *Malando Vazquez v. Feeley et al.*, No. 2:25-cv-01542-RFB-EJY at *34 (D. Nev. Sept. 17, 2025) (citing *Nken v. Holder*, 556 U.S. 418, 426 (2009)). "The automatic stay thus presents a conflict of interest in conferring unreviewable discretionary authority in the same prosecuting agency official that makes erroneous deprivation not just a risk, but likely." (*Id.*) (citing *Günaydin v. Trump*, 784 F. Supp. 3d 1175, 1188 (D. Minn. 2025)).

Moreover, all three *Matthews* factors weigh in favor of Petitioner. First, Petitioner's liberty—his right to freedom from Government detention—is at stake. Second, the risk of erroneously depriving him of his freedom is high as the automatic stay "permits an agency official who is also a participant in the adversarial process to unilaterally override the immigration judge's decisions". *Günaydin*, 2025 WL 1459154 at *8. And third, while the Respondents make no argument regarding the *Matthews* test, this Court finds that any government interest is in fact protected by the individualized determination by an IJ whether a noncitizen should be granted bond under § 1226. *See Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions."). The Court finds that the automatic stay, as applied in the present case, does not satisfy due process, because it allows for the most severe deprivation of liberty without a hint of a process to challenge such deprivation.

9

### D. Mootness

Lastly, the Court must address Respondents' argument that the IJ's September 12, 2025 Order moots the IJ's August 1, 2025 Order granting Petitioner bond. *See* (ECF No. 18). The IJ's September 12, 2025 Order relies on the BIA decision *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), which district courts across the country have rejected to follow. *See e.g.*, *Barrera v. Tindall*, No. 3:25-CV-541-RGJ, 2025 WL 2690565 (W.D. Ky. Sept. 19, 2025); *Zumba v. Bondi*, No. 25-CV-14626-KSH-, 2025 WL 2753496 (D.N.J. Sept. 26, 2025); *Lopez-Arevelo v. Ripa*, No. EP-25-CV-337-KC, 2025 WL 2691828 (W.D. Tex. Sept. 22, 2025); *Lopez-Campos*, No. 2:25-CV-12486, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Valencia Zapata v. Kaiser*, No. 25-CV-07492-RFL, 2025 WL 2741654 (N.D. Cal. Sept. 26, 2025). This Court likewise declines to follow *Matter of Yajure Hurtado*, whose interpretation of § 1225 is at odds with the text of § 1225 and § 1226, is inconsistent with earlier BIA decisions, and renders superfluous the recent Laken Riley Act amendments to § 1226(c).

### III. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Petitioner Cristian Aguilar Merino's Petition for Writ of Habeas Corpus, (ECF No. 1), is **GRANTED**.

2. Respondents' Motion to Dismiss, (ECF No. 18), is **DENIED AS MOOT**.

3. Respondents must release Petitioner from custody **IMMEDIATELY** upon Petitioner's compliance with the Immigration Judge's August 1, 2025 Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 15 of October 2025.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
All Counsel of Record